# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

AIM IMMUNOTECH, INC,

        Plaintiff,

v.                                                    Case No:   5:22-cv-323-GAP-PRL

FRANZ TUDOR, TODD DEUTSCH,
TED KELLNER, JONATHAN JORGL,
WALTER LAUTZ and MCEF
CAPITAL LLC,

        Defendants

---

## ORDER

This matter is before the Court to consider the imposition of Federal Rule of Civil Procedure 11(b) ("Rule 11(b)") sanctions against Plaintiff AIM Immunotech, Inc. ("Plaintiff" or "AIM") and its counsel. This cause came before the Court pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(c) and on the Motion to Alter or Amend Judgment (Doc. 100) filed by Defendant Walter Lautz ("Lautz") and the Motion for Sanctions (Doc. 108) filed by Defendant Jonathan Jorgl ("Jorgl"). The Court has also considered Plaintiff's Responses in Opposition (Docs. 104, 110) and Lautz's Reply (Doc. 113).

The Court heard oral argument on Lautz and Jorgl's Motions on December 19, 2023 (*see* Docs. 114, 146, 147). Shortly thereafter, Plaintiff submitted a post-hearing brief (Doc. 149), as did Lautz and Jorgl collectively (Doc. 150).[1] Accordingly, the issue of Rule 11(b) sanctions is ripe.

## I.   Background

### A.   Introduction

This action is the result of a contentious and protracted dispute between Plaintiff's incumbent board of directors and certain dissident shareholders seeking to elect new board members through a proxy fight. Having finally adjudicated this case, the Court must now make "specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) . . . as to any complaint, responsive pleading, or dispositive motion." *See* § 78u–4(c); *see also* Doc. 114 at 8-9.

Lautz and Jorgl have filed separate motions seeking sanctions against Plaintiff and its counsel. *See* Docs. 100, 108, 150. They primarily argue that Plaintiff (along with its counsel) continued to pursue its claim against them after that claim became frivolous. *See id.* Essentially, Lautz and Jorgl contend that Plaintiff has engaged in bad faith conduct reminiscent of the final line in Hotel California. *See*

---

[1] Plaintiff also filed a Notice of Supplemental Authority (Doc. 148).

The Eagles, *Hotel California*, *on* Hotel California (Asylum Records 1976). When Lautz and Jorgl sought to sever themselves from this case, Plaintiff seemingly responded: "You can check out any time you like, but you can never leave." *Id.* at 4:13. Lautz and Jorgl argue that this misconduct violated Rule 11(b). *See* Docs. 100, 108, 150.

### B.   Statement of the Case

Pursuant to the PSLRA and to properly comprehend the issue of sanctions now before the Court, a thorough review of this case is necessary.

### 1.   Plaintiff initiates this action.

Plaintiff is an immuno-pharma company that focuses on the treatment of cancer, immune disorders, and viral diseases. *See* Doc. 1, ¶ 13. On July 15, 2022, it initiated this action for declaratory and injunctive relief pursuant to § 13(d) of the Securities and Exchange Act of 1934 (the "Exchange Act"). *See* Doc. 1; § 78m(d) (requiring "any person" who acquires more than five percent of the stock of a publicly held company to file certain information with the stock's issuer, the relevant exchange, and the SEC). In its initial Complaint, Plaintiff sued: (1) Lautz; (2) Jorgl; (3) Franz Tudor ("Tudor"); (4) Todd Deutsch ("Deutsch"); (5) Ted Kellner ("Kellner"); (6) Robert Chioini ("Chioini"); and (7) Michael Rice ("Rice") (collectively, the "Initial Defendants"). *See* Doc. 1. Plaintiff alleged that the Initial Defendants—acting as a "group"—were staging a "hostile takeover" of Plaintiff's

board of directors through a proxy contest.[2] *See id.*; *see also* § 78m(d)(3) ("When two or more persons act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a 'person' for the purposes of this subsection.").

According to Plaintiff, Tudor acted as the linchpin for the Initial Defendants' § 13(d) "group." *See* Doc. 1, ¶¶ 15-23. Tudor is an AIM shareholder with a storied history, and Plaintiff has alleged that he "engaged in a systematic campaign to disparage AIM management, manipulate and knock down AIM's stock price, and disrupt stockholder relations." *Id.*, ¶ 22; *see also id.*, ¶¶ 15-17 (alleging that Tudor was convicted of insider trading in 2010 and more recently enjoined from contacting Plaintiff's business relations).

---

[2] Throughout its initial Complaint and its Amended Complaint, Plaintiff alleges that Defendants attempted to organize a "hostile takeover" of AIM via a proxy fight. *See, e.g.*, Doc. 54, ¶ 1 ("AIM is seeking mandatory disclosures from a group attempting a hostile takeover orchestrated and funded by two (2) felons convicted of fraud or insider trading."). However, Plaintiff's use of the term "hostile takeover" expands the term beyond its ordinary definition. Plaintiff's allegations suggest that Defendants attempted to replace two members of Plaintiff's board of directors through a proxy contest in an effort to improve Plaintiff's stock price and turn the company around. *See* Docs. 1, 54. But Plaintiff's allegations do not suggest that Defendants set out to own a controlling amount of the company's stock. *Compare Takeover*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining the term "hostile takeover" as the "acquisition of ownership or control of a corporation," "typically accomplished by a purchase of shares or assets, a tender offer, or a merger," "that is resisted by the target corporation") *with Proxy Contest*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining the term "proxy contest" as a "struggle between two corporate factions to obtain the votes of uncommitted shareholders," which usually "occurs when a group of dissident shareholders mounts a battle against the corporation's managers").

To support its claim that the Initial Defendants were operating as a "group," Plaintiff described their interconnectedness and relationships with Tudor. First, Plaintiff alleged that Tudor "surreptitiously engaged in a stockholder group consisting of, at a minimum, Deutsch and Kellner," but "upon information and belief," the group extended to Jorgl, Lautz, Chioini, and Rice. *Id.*, ¶ 21; *see also id.*, ¶ 27.

Next, Plaintiff summarized Lautz and Jorgl's attempts to nominate new members to Plaintiff's board of directors in advance of its 2022 Annual Meeting. *See id.*, ¶¶ 29-39. Regarding Lautz, Plaintiff alleged that, on April 18, 2022, Lautz submitted a proxy proposal to nominate Chioini and Daniel Ring for director positions on Plaintiff's board, but Plaintiff "rejected [his] proposal as flawed, and sought and received affirmation of its rejection from the SEC." *Id.*, ¶ 30; *see* Doc. 1-2. Regarding Jorgl, Plaintiff stated that, on July 8, 2022 (less than two weeks after he first acquired Plaintiff's stock), Jorgl provided Plaintiff with "a notice of stockholder intent to nominate [Chioini and Rice] for election as director." Doc. 1, ¶ 31; *see* Doc. 1-3 (hereinafter, Jorgl's "Notice"). Plaintiff also rejected Jorgl's Notice (on July 14, 2022, the day before it filed this action), on the basis that Jorgl's submission failed to disclose the Initial Defendants' agreements, arrangements, or

understandings and violated Plaintiff's bylaws.[3] *See* Doc. 1, ¶¶ 35-36; Doc. 54, ¶ 139.

Generally, AIM alleged that Jorgl and Chioini were "part of a group of individuals, which, upon information and belief, includes Tudor, Deutsch, Kellner, Lautz, and Rice, who are acting in concert pursuant to arrangements and/or understandings to take control of AIM for their own purposes and to the detriment of AIM and its other stockholders." *See* Doc. 1, ¶ 34; *see also id.*, ¶ 36. Plaintiff asserted that the Initial Defendants violated § 13(d) because, although they were acting as a "group," they did not file the necessary disclosures (*i.e.*, a Schedule 13D). *Id.*, ¶¶ 44-53. Plaintiff sought to enjoin the Initial Defendants "from committing any further violations of federal securities laws." *Id.*

## 2.    The Court dismisses this action for lack of standing.

After Plaintiff filed its Complaint, the Initial Defendants filed various motions, which Plaintiff opposed. *See* Docs. 17, 19, 32, 37, 44. For their part, Deutsch

---

[3] On July 29, 2022, Jorgl filed suit against AIM in Delaware Chancery Court regarding AIM's rejection of his Notice. *See* Doc. 44-1. In his motion for a preliminary injunction, Jorgl asked the Delaware Chancery Court to require AIM to accept his Notice and to permit his nominations at its 2022 Annual Meeting. *See* Doc. 44-3. However, the Delaware Chancery Court denied Jorgl's motion prior to AIM's Annual Meeting (where AIM's stockholders re-elected AIM's board members). *See* Doc. 79-1 at 9-52; *see also* Doc. 99; *infra* note 6 and accompanying text. Jorgl moved to dismiss the Delaware action shortly thereafter. *See* Plaintiff's Motion to Dismiss Complaint Pursuant to Court of Chancery Rule 41(a)(2) filed on April 20, 2023 in *Jorgl v. AIM Immunotech, Inc.*, No. 2022-0669-LWW (Del. Ch.), available at https://plus.lexis.com/api/permalink/25d59d50-3455-449a-a9ea-4221152ef7c6/?context=1530671.

and Kellner moved to dismiss the action because, among other things, Plaintiff failed to sufficiently plead the existence of a "group." *See* Doc. 19 at 13-18. Rice, on the other hand, sought a stay of the action pursuant to the *Colorado River* abstention doctrine and the Court's inherent authority based on Jorgl's suit against AIM in Delaware Chancery Court. *See* Doc. 44. Rice reasoned that the single issue in Plaintiff's Complaint—whether the Initial Defendants had an understanding or agreement that linked them together—would be decided in the Delaware action. *Id.* at 5.

Ultimately, the Court considered the issue of standing *sua sponte* and dismissed Plaintiff's Complaint for that reason alone. Doc. 48. The Court noted that the "legislative history of the Exchange Act, and the subsequent amendments [to] the Williams Act,[4] made clear that the sole purpose of § 13(d) was to protect present and potential investors—not the issuer corporation." *Id.* (citing *Liberty Nat'l Ins. Holding Co. v. Charter Co.*, 734 F.2d 545 (11th Cir. 1982)).

### 3.    Plaintiff files its Amended Complaint.

On November 9, 2022, AIM filed an Amended Complaint, adding MCEF Capital LLC ("MCEF Capital")[5] as a defendant and dropping Chioini and Rice from

---

[4] The Williams Act of 1968, which includes § 13(d), was passed to update various aspects of the Exchange Act. *See Liberty Nat'l Ins. Holding Co. v. Charter Co.*, 734 F.2d 545, 562 (11th Cir. 1982).

[5] AIM stated that MCEF Capital is partially owned and controlled by Deutsch and that the

its lawsuit. Doc. 54; *see also* Docs. 50, 51, 52, 53. Plaintiff asserted the same § 13(d) claim against Lautz, Jorgl, Tudor, Deutsch, Kellner, and MCEF Capital (collectively, "Defendants"), and it expanded upon its initial allegations regarding the Defendants' interconnectedness. *See* Doc. 54. Many of Plaintiff's new allegations related to: (1) Tudor's connections to Deutsch, Kellner, and Chioini and (2) Chioini's connections to Rice and a new addition to the "group," Michael Xirinachs ("Xirinachs"). *See, e.g.*, *id.*, ¶¶ 32-47, 51-54, 88-89, 99, 103-108, 117.

Regarding Lautz, Plaintiff's allegations again focused on his failed attempt to nominate Chioini and Ring for director positions. *See generally* Doc. 54. However, Plaintiff added context regarding Lautz's conversations with Tudor after his nomination attempt failed. *See id.*, ¶¶ 91-97. Specifically, Plaintiff stated that, although Lautz considered submitting a second nomination, he ultimately declined. *See id.* ("On June 15, 2022, Lautz texted Tudor that he 'can't be the face of this partaking.'"). Plaintiff also alleged that, after declining, Lautz asked Tudor if he was able to find someone to serve as the figurehead, and Tudor responded, "we are still looking." *Id.*, ¶ 97. Plaintiff's allegations regarding Lautz's involvement with the "group" end on June 22, 2022, several weeks prior to Jorgl's nomination attempt. *See generally* Doc. 54.

---

company itself owns nearly 1.5 million shares of Plaintiff's stock. Doc. 54, ¶¶ 8-9.

Regarding Jorgl, Plaintiff explained that he was prompted to purchase AIM stock by Chioini, Rice, and Xirinachs. *Id.*, ¶¶ 101-113. According to Plaintiff, Xirinachs and Chioini agreed to fund Jorgl's nomination attempt and related legal fees. *See id.*, ¶¶ 71, 101-113, 118-125. Plaintiff also alleged that Tudor had advance knowledge of Jorgl's Notice because he told Kellner about it before Jorgl submitted it. *See id.*, ¶¶ 80-81, 116.

Again, Plaintiff asserted that Defendants violated § 13(d) because: (1) they owned the requisite percent of Plaintiff's common stock and (2) had agreements or understandings to act together and in concert for the purpose of acquiring, holding, voting or disposing of Plaintiff's stock, "including to attempt to nominate and vote for the election of purported director nominees in an effort to take over AIM," but (3) failed to file the necessary disclosures. *Id.*, ¶ 144. This time, however, Plaintiff alleged that Defendants' § 13(d) violations allowed "AIM to seek injunctive relief requiring the named Defendants to file a true and complete Schedule 13D." *Id.*, ¶ 151. In support of that statement, Plaintiff cited *Florida Commercial Banks v. Culverhouse*, 772 F.2d 1513, 1519 (11th Cir. 1985). Doc. 54 at 25.

### 4.    The Court dismisses this action as moot.

Defendants again filed multiple motions to dismiss Plaintiff's Amended Complaint, and Plaintiff responded to each motion. *See* Docs. 63, 64, 76, 77, 79, 82.

In his motion, Lautz primarily argued that the Court did not have personal jurisdiction over him. *See* Doc. 63.

Jorgl took a different approach, focusing on the fact that he sold his AIM stock. *See* Doc. 79; Doc. 79-1 at 5-7 (Transfer of Ownership Form dated January 17, 2023). He also noted in passing that: (1) the Delaware Chancery Court had denied his motion for a preliminary injunction (through which he sought to force AIM to accept his Notice and permit his nominations at its 2022 Annual Meeting) and (2) that Plaintiff's incumbent directors had been re-elected to its board before it filed its Amended Complaint. *See* Doc. 79; Doc. 79-1 at 9-52 (Memorandum Opinion from the Delaware Chancery Court dated October 28, 2022).[6] Jorgl argued that, because he was no longer a "beneficial owner" of Plaintiff's stock, Plaintiff's claim against him was moot. Doc. 79. Citing *Hemispherx Biopharma, Inc. v. Johannesburg Consolidated Investments*, 553 F.3d 1351, 1362 (11th Cir. 2008), Jorgl asserted that he could no longer be compelled to file a Schedule 13D. *See id.* at 7-11. ("Importantly,

---

[6] The Delaware Chancery Court denied Jorgl's motion for a preliminary injunction days before this Court initially dismissed this action. *See* Doc. 79-1 at 9-52. In a Memorandum Opinion, Vice Chancellor Lori W. Will found that Jorgl failed to show his Notice complied with Plaintiff's bylaws and that the parties' factual dispute (regarding whether Jorgl's Notice was "part of a scheme involving undisclosed arrangements and understandings" or whether Plaintiff's board "acted to entrench itself at the expense of his right to nominate directors") made Jorgl's request for "an award of a mandatory injunction unattainable." *Id.* Vice Chancellor Will did not specifically conclude that Defendants were acting as a "group," and she expressly declined "to address every potentially involved person." *Id.* at 40. However, she indicated that, based on the limited factual record before her, it appeared "that Tudor and Xirinachs were working with Chioini and others to devise legal strategies and formulate a plan for the proxy contest." *Id.*

binding precedent has conclusively held that, to be a 'beneficial owner' under Section 13(d), a defendant *must independently own stock of the plaintiff company*."). In response, Plaintiff invoked the doctrine of voluntary cessation, arguing that it was far from clear that Jorgl's allegedly unlawful behavior would not recur. *See* Doc. 82 at 6-8.

After the motions were fully briefed, Magistrate Judge Philip R. Lammens issued a Report and Recommendation ("Report"). Doc. 86. In his Report, Judge Lammens recommended that the Court: (1) deny Lautz's motion; (2) deny Deutsch, Kellner, and MCEF Capital's collective motion; and (3) grant Jorgl's motion to dismiss for lack of subject matter jurisdiction because Plaintiff's claim against Jorgl was moot. *See id.*; *see also id.* at 13-15 ("Here, Jorgl did not simply agree to stop a challenged behavior. Rather, he transferred his AIM stock, and as a result, he cannot be compelled by this Court to make § 13(d) disclosures under clear Eleventh Circuit law.").

Plaintiff filed an Objection to the Report, *see* Doc. 89, as did Lautz, *see* Doc. 88. Deutsch, Kellner, and MCEF Capital also filed a collective Objection, *see* Doc. 90, in which they raised the doctrine of mootness for the first time. *Id.* at 10. Specifically, Deutsch, Kellner, and MCEF Capital argued:

> The entire focus of this action was an election of the Board of Directors, the Defendants' alleged search for a candidate to run for a position on the Board and an alleged plan to create a proxy contest and hostile takeover of AIM [Doc. 54, e.g. ¶¶ 49, 56, 57, 59-82, 86-125]. That

election has occurred, no takeover took place, and none of the Defendants placed anyone on the Board. There is no need or requirement for a 13(d) disclosure to be filed.

*Id.*

Although Jorgl filed a Response to Plaintiff's Objection, *see* Doc. 91, Plaintiff did not respond to either Lautz's Objection or Deutsch, Kellner, and MCEF Capital's collective Objection. As a result, the Court considered Deutsch, Kellner, and MCEF Capital's mootness argument to be unopposed. *See* Doc. 99 at 7.

The Court held that Plaintiff's § 13(d) claim was moot because Plaintiff's stockholders re-elected Plaintiff's nominees—Thomas K. Equels, William M. Mitchell, and Stewart L. Appelrouth—as its directors at its Annual Meeting of Stockholders on November 3, 2022.[7] *See generally* Doc. 99. Consequently, the Court dismissed Plaintiff's Amended Complaint. *See id* at 8.

### 5. Plaintiff files a motion for reconsideration, which the Court denies.

After the Court dismissed Plaintiff's Amended Complaint, Plaintiff asked the Court to either reconsider, alter, or relieve Plaintiff from its Order dismissing this action as moot. *See* Doc. 101 (entitled Plaintiff's Motion to Alter or Amend Order, or Alternatively, Motion for Relief from Order; hereinafter, "motion for

---

[7] Additionally, the Court noted that there was a question as to whether § 13(d) was even applicable given the facts of this case. Doc. 99 at 6-7 (citing *Hemispherx*, 553 F.3d at 1361 n.14).

reconsideration"). AIM argued that, even though it had successfully warded off Defendants' nomination attempts, the Court could "still grant meaningful injunctive relief against all Defendants to remedy their ongoing Section 13(d) violations"—particularly because a subset of Defendants (Deutsch and Kellner) had already expressed their intent to wage a proxy fight in 2023 and submitted "a materially deficient and inaccurate Schedule 13D with the SEC." *Id.*

AIM also asserted that its claim against Jorgl was not moot. *Id.* Notwithstanding the fact that Jorgl had sold his shares, AIM added a twist. *See id.* at 10-12. In addition to invoking the voluntary cessation doctrine (again), AIM took issue with the fact that Jorgl had redacted the name of the stock recipient on his Transfer of Ownership Form. *See id.*; *see also* Doc. 89 (Plaintiff's Objection to Judge Lammens's Report).

Defendants opposed Plaintiff's motion for reconsideration. *See* Docs. 102, 105, 106. Both Lautz and Jorgl primarily argued that Plaintiff's "new evidence" regarding Deutsch and Kellner's 2023 proxy fight had nothing to do with them. *See* Docs. 102, 106. In his response, Lautz noted that he "had no further participation" in Defendants' nomination efforts after AIM rejected his nomination attempt. *See* Doc. 102 at 2 ("[AIM's] [g]eneralized allegations are insufficient given that AIM has conducted discovery."). Jorgl, on the other hand, again argued that the Court lacked subject matter jurisdiction to adjudicate AIM's claim against him because he no

longer owned AIM stock. *See* Doc. 106. He asked the Court to reject AIM's "last-ditch attempts" to manufacture a factual dispute regarding his stock transfer. *Id.*

The Court denied Plaintiff's motion for reconsideration because Plaintiff "failed to put forth any evidence suggesting that its Amended Complaint [was] not moot." Doc. 111 at 4. It emphasized that AIM's latest arguments had no bearing on the allegations set forth in its Amended Complaint, "allegations related to Defendants' purported 'group' effort to wage a proxy contest in advance of Plaintiff's 2022 Annual Meeting." *Id.* The Court also advised Plaintiff that, if it intended to pursue a claim related to a potential 2023 proxy contest, it would need to file a new lawsuit. *Id.* at 4-5.

**C.      The Sanctions Proceedings**

**1.      Lautz argues that the PSLRA applies and seeks sanctions.**

On the same day that Plaintiff filed its motion for reconsideration, Lautz filed a motion pursuant to Federal Rule of Civil Procedure 59(e), in which he asked the Court to alter or amend its Order dismissing AIM's Amended Complaint so that it would comply with the PSLRA. *See* Doc. 100 (citing 15 U.S.C. § 78u–4(c)); *see also* Doc. 113 (Lautz's Reply). Lautz also urged the Court to impose sanctions against AIM and its counsel pursuant to the PSLRA because AIM lacked an objectively reasonable factual or legal basis for its claim against Lautz. *See* Doc. 100; *see also* Doc. 113. Specifically, he argued: (1) that Plaintiff's claim was doomed from the start

because § 13(d) only requires disclosures in certain circumstances (such as when an individual shareholder or a group of shareholders plans to make a tender offer or to acquire a controlling amount of a company's shares) and (2) that Plaintiff pursued its claim against him in bad faith and for the purpose of harassing him after Plaintiff took his deposition on September 21, 2022, and learned the (extremely limited) extent of his involvement with the alleged "group." *See* Doc. 100; *see also* Doc. 113.

Lautz included a copy of his September 2022 deposition with his motion. *See* Doc. 100-1. At his deposition, Lautz testified: (1) he is friends with Tudor (*id.* at 8); (2) both he and Tudor wanted to see a change in AIM's management (*id.* at 9; 20-21); (3) he briefly met Chioini and Ring through Tudor for the purpose of nominating them to serve on AIM's board (*id.* at 8); (4) he did not discuss his nomination with anyone other than Tudor, Chioini, and Ring prior to submitting it (*id.* at 10); (5) after AIM rejected his nomination attempt, he "moved on with [his] life and considered this a done [matter]" (*id.* at 13, 25); (6) he declined Tudor and Chioini's request to submit an additional nomination on June 15, 2022 (*id.* at 12-13, 14); (7) he learned of Jorgl's Notice through this lawsuit and had never heard of Jorgl before that, nor did he know Deutsch nor Kellner (*id.* at 11, 23, 25-26); and (8) he would have voted for "any new board nominee that qualified" because he "wanted fresh blood on the board" (*id.* at 26). In sum, Lautz testified that he ceased

his nomination efforts on June 15, 2022, moved on with his life, and "had not thought about this" until AIM filed this lawsuit against him (which took him by surprise). *See generally* Doc. 100-1; *see also id.* at 25-26.

In its response, AIM argued that the PSLRA does not apply to this action, that Lautz reads § 13(d) too narrowly (because its disclosure requirement is not limited only to scenarios involving tender offers or attempts to acquire a controlling amount of a company's shares), and that Lautz's reporting obligations never expire. *See* Doc. 104.

### 2.    Jorgl seeks sanctions.

While Lautz's motion was pending, Jorgl also moved for sanctions. *See* Doc. 108. However, Jorgl moved directly for sanctions pursuant to Rule 11(b) (rather than under the PSLRA), arguing that Plaintiff and its counsel engaged in bad faith conduct when they advanced frivolous arguments after he transferred his AIM stock. *Id.* Jorgl asserted (1) that, in an effort to seek retribution for his attempted proxy contest, AIM continued pursuing its suit against him even after Judge Lammens found that *Hemispherx* precluded AIM's amended § 13(d) claim and (2) that AIM waited too long to take issue with his redacted Transfer of Ownership Form and his Declaration, in which he stated that he had "no present intention of investing in AIM in the future." *Id.*

In its response, Plaintiff doubled down on its argument that Jorgl's redacted Transfer of Ownership Form failed to show that Jorgl was no longer a beneficial owner of AIM stock. *See* Doc. 110. AIM explained that, on the day Jorgl moved to dismiss its claim as moot, AIM served him with a request to produce seeking, among *many* other things, "documents reflecting the amount of AIM stock [Jorgl] owned over the period of January 1, 2022 through the present" and "documents, records, and communications related to any purchase and sale of stock or securities of AIM stock, or any Derivative Interest in AIM Securities." *See id.* at 6; Doc. 110-1 at 10-11. Plaintiff asserted that, on March 7, 2023, Jorgl produced only his redacted Transfer of Ownership Form in response to Plaintiff's request. Doc. 110 at 6; *see also* Doc. 110-1 at 10-11. However, Plaintiff failed to explain why it did not either: (1) raise an issue regarding Jorgl's redacted form in its response to Jorgl's motion to dismiss or (2) file a motion to compel. *See* Doc. 110. Nor did Plaintiff cite or discuss *Hemispherx*. *Id.*

### 3. The Court holds that the PSLRA applies and sets a hearing.

After Lautz and Jorgl's motions were fully briefed, the Court held that the PSLRA applies to this action and set a hearing on the issue of sanctions. Doc. 114. It advised Plaintiff and its counsel to be prepared to discuss the propriety of Lautz and Jorgl's requests for sanctions at the hearing. *Id.* at 9. In its Notice of Hearing, the Court ordered Jorgl's counsel to file an unredacted copy of Jorgl's Transfer of

Ownership Form on the docket under seal and to serve a copy of the unredacted form on Plaintiff's counsel. Doc. 115.

Prior to the hearing, AIM filed an exhibit list and a "submission regarding Rule 11 Sanctions." *See* Docs. 130, 132. Both Plaintiff's exhibit list and its "submission" included declarations from Thomas K. Equels (Plaintiff's CEO) and Mayanne Downs (lead counsel for Plaintiff). *See id.*

Upon consideration of AIM's exhibit list, the Court ruled that it would not rely on Thomas K. Equels or Mayanne Downs's declarations unless Thomas K. Equels and Mayanne Downs were present at the hearing and subject to cross-examination. Doc. 131. The Court also granted Jorgl's Motion to Strike AIM's Unauthorized Supplemental Filing Regarding Rule 11 Sanctions because the Court "neither requested nor permitted the parties to file additional briefing on the merits of the pending Motions for Sanctions." Doc. 136.

### 4.     The Court hears oral argument on the issue of sanctions.

At the sanctions hearing, neither AIM nor its counsel presented any evidence. *See* Doc. 147. Specifically, AIM chose not to introduce the testimony of either Thomas K. Equels or Mayanne Downs. *See id.*

During the hearing, the parties summarized their arguments regarding: (1) whether Plaintiff's Amended Complaint was objectively frivolous at the time it was filed because Plaintiff's claim was already moot; (2) whether counsel for

Plaintiff should have known that the Amended Complaint was frivolous at the time it was filed; (3) whether Plaintiff's claim against Jorgl was objectively frivolous after Jorgl transferred his stock to a third party; and (4) whether Plaintiff's counsel should have known that Plaintiff's claim against Jorgl was frivolous after Jorgl transferred his stock to a third party. *See id.*; *see also* Doc. 114 at 9. Toward the end of the hearing, the Court set a briefing schedule at AIM's request. Doc. 147 at 51-54.

### 5. The parties file post-hearing briefs.

After the sanctions hearing, Plaintiff filed a brief, as did Lautz and Jorgl collectively. *See* Docs. 149; 150. In its brief, AIM (and its counsel) argued that AIM's filings did not meet the high standard for Rule 11(b) sanctions because (1) AIM's filings were not objectively frivolous and (2) AIM's counsel had conducted a reasonable inquiry before submitting the filings. *See* Doc. 149. Specifically, AIM contended that its "Amended Complaint was not moot when it was filed," and even if it was moot, "the mootness was not so obvious as to render AIM's claims objectively frivolous." *Id.* at 6-13. AIM also asserted that "it was not erroneous—and certainly not objectively frivolous—for AIM to contend that" its § 13(d) claim against Jorgl was not moot, despite the fact that Jorgl had transferred his shares. *Id.* at 14-24. Additionally, AIM referenced the Delaware Chancery Court's opinion in *Kellner v. AIM ImmunoTech Inc.*, 307 A.3d 998 (Del. Ch. 2023), a case that Kellner filed

after AIM rejected his attempt to nominate himself, Deutsch, and Chioini as director candidates in advance of AIM's 2023 Annual Meeting. *See id*.[8]

In their brief, Lautz and Jorgl argued that Plaintiff's Amended Complaint was objectively frivolous when it was filed, that Plaintiff's claim against Jorgl was objectively frivolous after he sold his stock, and that the Court should sanction both AIM and its counsel. Doc. 150. Beyond reiterating their prior arguments, Lautz and Jorgl also pointed to the lack of record evidence showing that AIM or its counsel conducted a reasonable inquiry before filing the Amended Complaint. *Id.* at 4, 14, 18-19. They specifically asked the Court to "decline to entertain AIM's self-serving and unsubstantiated *post hoc* factual statements." *Id.* Additionally, Lautz and Jorgl asserted that AIM blatantly miscited the *Kellner* opinion. *Id.* at 3.

## II.    Legal Standard

Rule 11(b) provides:

By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

---

[8] In the *Kellner* opinion, Vice Chancellor Will entered partial judgment in AIM's favor, specifically on Kellner's claim that AIM should have accepted his nomination attempt because he sufficiently complied with AIM's amended bylaws. *See generally Kellner v. AIM ImmunoTech Inc.*, 307 A.3d 998 (Del. Ch. 2023). But Vice Chancellor Will also entered partial judgment against AIM, finding that some of its amended bylaws were illegal. *Id.*

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

*Id.* Under Rule 11(b), "sanctions are warranted when a party files a pleading or motion that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Golisano v. Burlington, Inc.*, 34 F.4th 935, 941–42 (11th Cir. 2022) (internal quotation marks omitted).

Pursuant to Rule 11(c)(1), the Court may sanction "any attorney, law firm, or party" that violated or is responsible for a violation of Rule 11(b). *See* Fed. R. Civ. P. 11(c)(1) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."). If a party "has made a knowing factual misrepresentation or is the mastermind behind the frivolous case," then sanctions against the party itself are appropriate. *Johnson v.*

*27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1315 (11th Cir. 2021) (internal quotation marks omitted). However, sanctioning an attorney rather than (or in addition to) a party is "sometimes proper" to avoid a sanction that penalizes a client for the offenses of its counsel. *Worldwide Primates, Inc. v. McGreal,* 87 F.3d 1252, 1254 (11th Cir. 1996).

In considering a motion for sanctions, the Court must conduct a two-step inquiry, determining: (1) whether the party's claims are objectively frivolous in law or fact; and (2) whether the person who signed the pleadings should have been aware that they were frivolous. *Gulisano*, 34 F.4th at 942. "A factual claim is frivolous when it has no reasonable factual basis," whereas a "legal claim is frivolous when it has no reasonable chance of succeeding." *Id.* If the evidence in support of a claim is weak, but enough to support "a claim under existing law after a reasonable inquiry," sanctions are unwarranted. *Id.*

If an attorney "exhibits a deliberate indifference to obvious facts," sanctions are warranted against the attorney. *Id.* (internal quotation marks omitted). Additionally, if the Court determines that an attorney failed to make a reasonable inquiry, it "must impose sanctions despite the attorney's good faith belief that the claims were sound." *Id.* The reasonableness of the attorney's inquiry varies based on the circumstances of the case. *Id.*

"[A]n attorney's obligations with respect to the contents of pleadings or motions are not measured solely as of the time when the pleading or motion is

initially filed with the court, but also at the time when the attorney, having learned the claims lack merit, reaffirms them to the court." *Id.* Even if the allegations set forth in the complaint were not frivolous at the time the complaint was filed, the Court may nevertheless sanction an attorney for continuing to advocate for a meritless claim after "it should have been clear" that the claim was no longer tenable. *Id.* at 942–43.

## III.   Analysis

### A.   Introduction

"Section 13(d)(1) of the Exchange Act is a reporting provision that requires any person who accumulates more than five percent of the stock of a publicly held company to disclose certain information to the issuer of the stock, the exchanges on which the stock is traded, and the SEC." *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1362 (11th Cir. 2008) (citing 15 U.S.C. § 78m(d)(1)). Section 13(d)(3) states: "When two or more persons act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a 'person' for the purposes of this subsection." § 78m(d)(3). Pursuant to an SEC regulation, the information required under § 13(d)(1) must be included on a Schedule 13D form. *Hemispherx*, 553 F.3d at 1362 (citing 17 C.F.R. § 240.13d–101).

Two questions are at the heart of this analysis: (1) what constitutes a viable claim under § 13(d) and (2) when must a plaintiff abandon a § 13(d) claim.

The Eleventh Circuit has noted that "there may be an open question as to whether a private cause of action lies in issuers to enforce § 13(d)." *See Hemispherx*, 553 F.3d at 1362 n.14. In a footnote in *Hemispherx Biopharma, Inc. v. Johannesburg Consolidated Investments*, 553 F.3d 1351 (11th Cir. 2008), the Eleventh Circuit stated:

> Both the text and legislative history of section 13(d) are silent on this point. When a statute does not expressly provide for a private cause of action, as section 13(d) does not, we conduct a four-part analysis to discern congressional intent to imply a private cause of action: (1) "is [the plaintiff] one of the class for whose *especial* benefit the statute was enacted"; (2) "is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) "is it consistent with the underlying purposes of the legislative scheme to imply a remedy for the plaintiff"; and (4) "is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." *Cort v. Ash,* 422 U.S. 66, 78 (1975) (internal quotations marks and citations omitted); *see also Touche Ross & Co. v. Redington,* 442 U.S. 560, 568 (1979).

> This Court has considered this issue twice. In *Liberty Nat'l Ins. Holding Co. v. Charter Co.*, 734 F.2d 545, 561 (11th Cir. 1984), the panel held, after applying the *Cort* test, that Congress did not intend for § 13(d) to implicitly create a private cause of action for the issuer and that § 13(d) does not provide for private injunctions to divest. A little over a year after *Liberty National* was decided, another panel of this court held in *Florida Commercial Banks v. Culverhouse,* 772 F.2d 1513, 1519 (11th Cir. 1985), that issuers have an implied cause of action under § 13(d) for injunctive relief to compel a qualifying shareholder to file a corrective Schedule 13D. The *Culverhouse* panel reasoned that "[s]ince the remedy that the plaintiffs sought in *Liberty National* was significantly different from the remedy sought in the instant case," it was free to "independently determine whether" an implied cause of

action existed. *Culverhouse*, 772 F.2d at 1516. Because this issue was not raised by the parties or addressed by the district court, we do not decide which interpretation is appropriate here.

*Id.* at 1362 n.14.

Plaintiff cited *Culverhouse* in its Amended Complaint, and it has argued that the *Culverhouse* panel's holding supports its § 13(d) claim. *See* Doc. 54 at 25; *see also* Doc. 50. As the Eleventh Circuit explained in *Hemispherx*, the *Culverhouse* panel recognized an implied—but limited—private right of action for an issuer to seek *corrective* disclosures under § 13(d) (and § 14(d)) of the Exchange Act.[9] *Culverhouse*, 772 F.2d at 1519. However, this right came with an explicit warning: "By providing issuers with this cause of action to enforce the Williams Act, this Court does not intend to allow the directors of corporations, who clearly have an economic interest in protecting their own positions, to use corporate resources simply to harass and burden aggressive outsiders."[10]  *Id.* (citing *Liberty Nat'l*, 734 F.2d at 567). The panel

---

[9] The *Culverhouse* panel explained:

> In most cases, shareholders simply cannot protect their own interests; they lack the resources to confirm the accuracy of information in a Schedule 13D or 14D-1. The SEC simply cannot police every tender offer or major acquisition subject to the Williams Act. The issuer is frequently in the best position to seek corrective disclosures within a time frame that will optimize the benefit to shareholders of such disclosures. We conclude that it is necessary to grant this private right of action to issuers in order for the Williams Act to be effective.

*Culverhouse*, 772 F.2d at 1519 (footnotes and citations omitted).

[10] The Supreme Court issued a similar warning in *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49 (1975):

> The purpose of the Williams Act is to insure that public shareholders who

stated that, when courts face this kind of abuse, they "should invoke appropriate sanctions under Rule 11." *Id.*

Courts routinely warn stock issuers that they may only use § 13(d) as a shield to protect their shareholders—*not* as a sword. *See, e.g.*, *id.*; *see also Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 58 (1975); *Liberty Nat'l*, 734 F.2d at 566. This case requires the Court to determine whether AIM and its counsel heeded these warnings.

### B.      PSLRA Inquiry and Lautz's Motion for Sanctions

The PSLRA states, in relevant part: "In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) . . . as to any complaint, responsive pleading, or dispositive motion." 15 U.S.C. § 78u–4(c)(1). This statute limits the Court's discretion "on two fronts: (1) in choosing whether to conduct the

---

are confronted by a cash tender offer for their stock will not be required to respond without adequate information regarding the qualifications and intentions of the offering party. By requiring disclosure of information to the target corporation as well as the Securities and Exchange Commission, Congress intended to do no more than give incumbent management an opportunity to express and explain its position. The Congress expressly disclaimed an intention to provide a weapon for management to discourage takeover bids or prevent large accumulations of stock which would create the potential for such attempts. Indeed, the Act's draftsmen commented upon the extreme care which was taken to avoid tipping the balance of regulation either in favor of management or in favor of the person making the takeover bid.

*Id.* at 58 (citations, internal quotation marks, and footnotes omitted).

Rule 11(b) inquiry and (2) in determining whether to impose sanctions following a finding of a Rule 11(b) violation." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 636 (11th Cir. 2010).

Having conducted the mandated Rule 11(b) inquiry, the Court concludes that neither the Defendants nor their counsel violated Rule 11(b).[11]  However, the same cannot be said for Plaintiff. Although AIM's initial Complaint may have been filed in good faith, its Amended Complaint violated Rule 11(b) to the extent that AIM reasserted its § 13(d) claim against Lautz.

### 1.   Plaintiff's Initial Complaint Generally

Generally, Plaintiff's initial Complaint (and its Amended Complaint) did not violate Rule 11(b) because: (1) Plaintiff's § 13(d) claim appears to have been asserted for a proper purpose; (2) Plaintiff's § 13(d) claim was supported by a nonfrivolous argument for extending the law; and (3) Plaintiff's factual contentions were likely

---

[11] None of the Defendants (*i.e.*, Lautz; Jorgl; Tudor; Deutsch; Kellner; MCEF Capital; Chioini; and Rice) nor their attorneys violated Rule 11(b). As indicated in the Statement of the Case, Defendants' responsive pleadings and dispositive motions were warranted either by existing law or nonfrivolous arguments to extend the law.

That said, it is worth noting that the Court has construed Tudor's "Motion for Dismissal of Civil Action" (Doc. 17) liberally because he proceeded pro se. *See Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) ("pro se pleadings are held to a less strict standard than pleadings filed by lawyers"). Although Tudor's motion may have been sanctionable had it been filed by an attorney, Tudor did not violate Rule 11(b) under the circumstances. *Thomas v. Evans*, 880 F.2d 1235, 1240 (11th Cir. 1989) ("Rule 11 applies to pro se plaintiffs, but the court must take into account the plaintiff's pro se status when determining whether the filing was reasonable.").

to have evidentiary support after a reasonable opportunity for further investigation or discovery.

First, Plaintiff's stated purpose for this lawsuit, ensuring that its shareholders received sufficient information in advance of an impending proxy fight, was proper. As explained in the Statement of the Case, Plaintiff initiated this lawsuit immediately after it rejected Lautz and Jorgl's attempts to nominate Chioini. Plaintiff believed that these separate attempts to nominate the same person to its board were related and that both attempts were organized by the same "group" — which had not filed a Schedule 13D. As a result, Plaintiff sued the "group" members, seemingly for the purpose of garnering information for its shareholders regarding the alleged group's effort to replace two of Plaintiff's board members through a proxy contest.

Second, Plaintiff's § 13(d) claim was not legally frivolous. As noted above, there *may* be an open question in the Eleventh Circuit as to whether issuers have a private cause of action to enforce § 13(d). *See Hemispherx*, 553 F.3d at 1362 n.14. But this case did not require the Court to reach the merits of that question, and Plaintiff's arguments regarding *Culverhouse* were reasonable given the facts of this case.

Third, Plaintiff's § 13(d) claim had a reasonable factual basis. Although Plaintiff's allegations regarding the "group" members' interconnectedness were weak, the allegations were nevertheless sufficient (and, in fact, bore out in part),

considering that both Lautz and Jorgl attempted to nominate Chioini as a director in advance of AIM's 2022 Annual Meeting.

### 2.  Plaintiff's Amended Complaint Generally

Before the hearing on the issue of sanctions, the Court asked the parties to address whether Plaintiff's Amended Complaint was objectively frivolous at the time it was filed because Plaintiff's § 13(d) claim was already moot. With the benefit of the parties' arguments, the Court has determined that AIM (primarily) reasserted its § 13(d) claim in good faith, even though it filed its Amended Complaint after its stockholders re-elected its board members at its 2022 Annual Meeting. *But see infra* Section III.B.3.

For the most part, Plaintiff's Amended Complaint was neither legally nor factually frivolous. Rather, Plaintiff simply failed to tailor its Amended Complaint to reflect the fact that the proxy contest at the center of *both* complaints was unsuccessful. This created a justiciability issue because Plaintiff did not allege whether Lautz, Jorgl, Tudor, Deutsch, and Kellner intended to continue their "collective" fight for board seats after Plaintiff's directors were re-elected.[12] Once their proxy contest failed, the Defendants seemingly lacked a shared purpose and,

---

[12]  In fact, Deutsch and Kellner attempted to stage a proxy contest in advance of AIM's 2023 Annual Meeting, and they filed a Schedule 13D in furtherance of that goal. *See* Docs. 101-1, 101-3, 101-4. Upon learning of these facts, the Court recognized that AIM might "be able to assert a new claim against a subgroup of Defendants based on a different set of allegations and a distinct theory of liability." Doc. 111 at 4-5.

therefore, could no longer be considered a "group."[13] As a result, the Court found

that Plaintiff's amended § 13(d) claim was nonjusticiable.

In short, Plaintiff's Amended Complaint was simply a longer (and albeit

slightly improved upon) version of its initial Complaint. Ultimately, however,

Plaintiff's failure to sufficiently tailor its amended § 13(d) claim to the evolving facts

rendered that claim nonjusticiable, but not sanctionable.[14]

### 3.     Plaintiff's § 13(d) Claim Against Lautz

In his briefings on the issue of sanctions, Lautz argues that AIM (and its

counsel) pursued its amended § 13(d) claim against him in bad faith after AIM's

Delaware counsel deposed Lautz on September 21, 2022, and learned that he was

no longer involved in the alleged group's proxy fight.

When Plaintiff filed its Amended Complaint on November 9, 2022, it had no

reasonable factual basis for its § 13(d) claim against Lautz, and both Plaintiff and its

counsel should have known that.[15] By then, Lautz had unequivocally testified that

---

[13] *See* 15 U.S.C. § 78m(d)(3) ("When two or more persons act as a partnership, limited partnership, syndicate, or other group *for the purpose of* acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a 'person' for the purposes of this subsection." (emphasis added)).

[14] Notably, the issue of mootness was not immediately raised in Defendants' motions to dismiss; instead, it was first addressed in an objection to Judge Lammens's Report. *See supra* Section I.B.4.

[15] It is worth noting that AIM's counsel emphasized that it was well-apprised of the Delaware action, but never addressed Lautz's deposition, in AIM's post-hearing brief. *See* Doc. 149 at 11-13 ("AIM's counsel's investigation of the facts, bolstered by discovery AIM obtained in related 2022 Delaware litigation, . . . provided a sound basis for filing the Amended Complaint. . . . AIM's

his affiliation with the alleged "group" was miniscule at best and that his nomination efforts ended after AIM rejected his nomination attempt. Simply put, there is *nothing* in the record before the Court that contradicts Lautz's testimony that he abandoned his nomination efforts in June of 2022—long before Plaintiff filed its Amended Complaint—and moved on with his life.

### C.      Jorgl's Motion for Sanctions

In addition to Lautz, Jorgl also seeks sanctions against AIM and its counsel.[16] Generally, Jorgl argues that Plaintiff (and its counsel) violated Rule 11(b) when it advanced two frivolous arguments (for the purpose of harassing him and needlessly increasing his litigation costs) after he transferred his AIM stock.

#### 1.      Plaintiff's Argument Regarding the Voluntary Cessation Doctrine

Less than a week after he transferred his AIM stock, Jorgl moved to dismiss Plaintiff's claim against him as moot under *Hemispherx*. In response, Plaintiff *only* invoked the doctrine of voluntary cessation. However, Plaintiff's voluntary

---

counsel also apprised itself of the Delaware Action's record, conferring with AIM and its Delaware counsel to confirm that all facts alleged in the pleadings were supportable and accurate. . . . AIM's counsel also sought review of the proposed Amended Complaint by AIM's outside counsel in the Delaware Action, Potter Anderson & Corroon LLP and Kirkland & Ellis LLP, as a part of its due diligence, and AIM's internal counsel.").

[16] The Court considers Jorgl's Motion for Sanctions separately because it does not directly relate to "any complaint, responsive pleading, or dispositive motion." *See* § 78u–4(c)(1).

cessation argument was expressly rejected by Judge Lammens. Specifically,

Judge Lammens stated:

> AIM alleges that Defendants formed a group to attempt a hostile
> takeover without filing the disclosures required by § 13(d). AIM seeks
> to compel Defendants to provide the disclosures. The Eleventh Circuit,
> however, has held that individuals who are not beneficial owners of
> company stock cannot be compelled to file § 13(d) disclosures as to that
> company. *Hemispherx Biopharma, Inc. v. Johannesburg Consol.
> Investments*, 553 F.3d 1351, 1365–66 (11th Cir. 2008) ("[A] beneficial
> ownership interest in securities is necessary to become a member of a
> group within the meaning of section 13(d)(3) of the Exchange Act.").
> Because Jorgl no longer owns AIM stock, the Court cannot compel him
> to make disclosures under § 13(d).
>
> Nevertheless, AIM contends that its claim against Jorgl is not
> moot because it is "far from clear that Jorgl's misconduct will not
> recur." (Doc. 82 at 7). This argument is based on the doctrine of
> voluntary cessation. However, as Jorgl correctly points out, this is not
> a case of voluntary cessation, which applies where a party agrees to
> stop a challenged behavior. . . .
>
> Here, Jorgl did not simply agree to stop a challenged behavior.
> Rather, he transferred his AIM stock, and as a result, he cannot be
> compelled by this Court to make § 13(d) disclosures under clear
> Eleventh Circuit law. The mere speculation that Jorgl could buy AIM
> stock in the future is purely hypothetical and fails to establish a live
> controversy. . . .
>
> Accordingly, because the Court can no longer grant the sole
> relief that AIM seeks as to Jorgl—to compel disclosures under § 13(d)—
> the claims against Jorgl are moot and should be dismissed for lack of
> subject matter jurisdiction.

Doc. 86 at 13-15 (footnotes omitted).

After Judge Lammens expressly rejected AIM's voluntary cessation

argument, AIM continued arguing that its § 13(d) claim against Jorgl *had* merit—

even though Jorgl was no longer a beneficial owner—under the voluntary cessation doctrine. *See*, *e.g.*, Doc. 101 at 10-12. Indeed, Plaintiff repeatedly advanced this argument without *ever* addressing the relationship between the voluntary cessation doctrine and Eleventh Circuit's holding in *Hemispherx* (a case that AIM's CEO Thomas K. Equels litigated as an attorney in private practice).[17] *See id.*, Doc. 110, Doc. 149.

AIM and its counsel simply chose to ignore the Eleventh Circuit's holding in *Hemispherx* to champion an argument under the voluntary cessation doctrine that had no reasonable chance of success.[18] This argument was objectively frivolous and advanced for an improper purpose, and both AIM and its counsel should have known that.

### 2.   Plaintiff's Argument Regarding Jorgl's Transfer of Ownership Form

After Judge Lammens issued his Report, Plaintiff and its counsel seemingly went back to the drawing board, in search of a different argument showing that Plaintiff's § 13(d) claim against Jorgl had merit even though Jorgl transferred his

---

[17] Interestingly, Plaintiff recognized that *Hemispherx* states that a "beneficial ownership interest in securities is necessary to become a member of a group within the meaning of section 13(d)(3)" while it was advancing a different argument. *See* Doc. 89 at 6 (quoting *Hemispherx*, 553 F.3d at 1365–66).

[18] In Plaintiff's Submission Regarding Rule 11 Sanctions, Plaintiff devoted multiple pages to attacking Judge Lammens's Report without even citing *Hemispherx*. *See* Doc. 149 at 15-22.

AIM stock. Accordingly, in its Objection to Judge Lammens's Report, AIM asserted that Jorgl's Transfer of Ownership Form failed to establish that he was no longer a beneficial owner of its stock. *See* Doc. 89. AIM took issue with the fact that Jorgl redacted the stock recipients' name, contact information, and signature. *Id.*

AIM has boldly claimed that "the timing of Jorgl's disposal of his stock, coupled with his scant evidence of that disposal and his refusal to provide information about the transferee," suggest that Jorgl remains a beneficial owner. *See* Doc. 110 at 13. However, Plaintiff's allegation regarding Jorgl's hypothetical "continued beneficial ownership" is wholly unsubstantiated and ignores the statements Jorgl made in the Declaration that he filed with his motion to dismiss (under the penalties of perjury). *See* Doc. 79-1 at 1-3. Moreover, beyond a buried request to produce and a request for discovery included in a footnote, there is no evidence showing that Plaintiff's counsel made any effort to identify the recipient of Jorgl's stock. Accordingly, Plaintiff and its counsel violated Rule 11(b) when they belatedly argued that Jorgl's redacted Transfer of Ownership Form failed to sufficiently establish that he was no longer a beneficial owner of Plaintiff's stock.

### D.    Sanctions

As set forth above, AIM and its counsel violated Rule 11(b) because AIM continued to pursue its § 13(d) claim against Lautz and Jorgl past the point when the claim transformed from a permissible shield (deployed to protect AIM's

shareholders) into a sanctionable sword. The Court must now consider the appropriate sanctions for this misconduct.

Rule 11(c) states, in relevant part:

> If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee. . . .

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

*Id.*

The record suggests that both AIM's CEO Thomas K. Equels and AIM's counsel were the masterminds behind this lawsuit and responsible for the violations of Rule 11(b) that the Court has identified. Notably, Thomas K. Equels is an attorney, and he litigated cases involving § 13(d) while in private practice—including *Hemispherx*. *See* Doc. 149 at 13.

Plaintiff's counsel of record consists of Mayanne Downs, Jason Alec Zimmerman, and Joshua Bachman of GrayRobinson, P.A. and Michael Francis

Williams of Kirkland & Ellis LLP.[19] *See* Doc. 114. For present purposes, the monetary sanctions set forth below apply jointly and severally to AIM, its four attorneys, GrayRobinson, P.A., and Kirkland & Ellis LLP. However, Michael Francis Williams and Kirkland & Ellis LLP are only liable for sanctions incurred on or after October 23, 2023. *See* Doc. 118.

> **1.      Lautz is presumably entitled to an award of his reasonable attorneys' fees and costs incurred on or after November 9, 2022.**

Under the PSLRA, the Court must sanction AIM and its counsel for violating Rule 11(b). *See* 15 U.S.C. § 78u–4(c)(2). The PSLRA provides some guidance as to the appropriate sanction, stating:

> **Presumption in favor of attorneys' fees and costs**
>
> **(A) In general**
>
> Subject to subparagraphs (B) . . . the court shall adopt a presumption that the appropriate sanction–
>
> **. . .**
>
> > **(ii)** for substantial failure of any complaint to comply with any requirement of Rule 11(b) . . . is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action.

---

[19] The Court notes that Kirkland & Ellis LLP also served as AIM's Delaware counsel. *See* Doc. 149 at 11-13.

(B)  **Rebuttal evidence**

The presumption described in subparagraph (A) may be rebutted only upon proof by the party or attorney against whom sanctions are to be imposed that–

**(i)** the award of attorneys' fees and other expenses will impose an unreasonable burden on that party or attorney and would be unjust, and the failure to make such an award would not impose a greater burden on the party in whose favor sanctions are to be imposed; or

**(ii)** the violation of Rule 11(b) of the Federal Rules of Civil Procedure was de minimis.

*Id.* § 78u–4(c)(3).

AIM's Amended Complaint substantially failed to comply with Rule 11(b) to the extent that AIM reasserted its § 13(d) claim against Lautz even though it had no factual support for that claim. Accordingly, Lautz is presumably entitled to an award of his reasonable attorneys' fees and costs incurred on or after the date that Plaintiff filed its Amended Complaint, November 9, 2022. The burden now shifts to AIM and its counsel to present evidence rebutting this presumption.

> **2.  Jorgl is entitled to an award of his reasonable attorneys' fees and costs incurred after March 28, 2023.**

As noted above, Jorgl moved to dismiss AIM's amended § 13(d) claim for lack of subject matter jurisdiction after he sold his stock, and Judge Lammens found that AIM's claim against Jorgl was due to be dismissed under binding Eleventh Circuit precedent. From that point forward, AIM's arguments to the contrary (regarding

the voluntary cessation doctrine and Jorgl's Transfer of Ownership Form) were factually and legally frivolous and advanced for an improper purpose. Simply put, AIM and its counsel obstinately refused to relinquish Jorgl from this lawsuit, without any care for the relevant facts or applicable law. As a result, Jorgl is entitled to an award of his reasonable attorneys' fees and costs incurred after March 28, 2023, the date that Judge Lammens issued his Report. *See* Doc. 86.

## IV.    Conclusion

Accordingly, it is **ORDERED** that:

1. Defendant Walter Lautz's Motion to Alter or Amend Judgment (Doc. 100) is **GRANTED**.

2. Defendant Jonathan Jorgl's Motion for Sanctions (Doc. 108) is **GRANTED in part and DENIED in part**. To the extent that Jorgl requests an award of his reasonable attorneys' fees and costs incurred after March 28, 2023, Jorgl's Motion is **GRANTED**. In all other respects, Jorgl's Motion is **DENIED**.

3. Within fifteen (15) days from the date of this Order, Defendants Walter Lautz and Jonathan Jorgl shall file supplemental applications for attorneys' fees and costs consistent with this Order, with supporting documentation.

4. Within fifteen (15) days from the date that Lautz and Jorgl file their

supplemental applications, Plaintiff AIM Immunotech, Inc. and its counsel shall file their response(s).

5.  Within fifteen (15) days from the date that Plaintiff and its counsel file their response(s), Lautz and Jorgl may file replies not to exceed ten (10) pages.

6.  The Court will conduct a hearing on the amount of sanctions upon the request of any party.

7.  The Court will direct the clerk to enter final judgment after it rules on Lautz and Jorgl's supplemental applications.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 22, 2024.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party